### Railway Passengers and Freight Conductors' Mutual Aid and Benefit Association v. Jennie G. Thompson.

1. BENEFICIARY ASSOCIATIONS—*Burden of Proof as to Defaulting Members.*—The burden of proof is upon the association to establish the default of one of its members by competent proof before it will be permitted to insist upon a forfeiture.

2. SAME—*Notice of an Assessment, When Invalid.*—A notice requiring a member of a beneficiary association to pay an assessment within a less time than that prescribed by the by-laws and before it is due, is invalid.

3. SAME—*Date of Assessments.*—The date of an assessment, where the rules provide no special act or form in making an assessment, is the date of mailing the notice of such assessment.

Bill to Compel the Levy of an Assessment.—Appeal from the Superior Court of Cook County. Heard in the Branch Appellate Court at the October term, 1899. Affirmed. Opinion filed November 8, 1900.

E. F. THOMPSON and FRANK HUMBOLDT CLARK, attorneys for appellant.

DEMING & MURPHY and MARTIN & LAMBERT, attorneys for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

This is a bill exhibited by appellee seeking to compel the appellant to levy an assessment upon its members and pay appellee a sum not exceeding twenty-five hundred dollars claimed to be due her as the widow of one L. M. Thompson, deceased, under a certificate of membership held by said Thompson at the time of his death, in said appellant's association. It appears that Thompson became a member of the association December 3, 1894, and received a certificate of membership, which, on or about November 26, 1897, was replaced by a new one, the form of certificate having been changed. It is under this new certificate that the present claim is prosecuted. Appellant's refusal to pay the amount which the appellee claims to be entitled to by reason of the death of said Thompson, is upon the alleged ground that at the time of his death Thompson had ceased to be a member of the association, owing to his failure to pay within the time required, the amount due from him upon two assessments, being numbers 357 and 358.

The controlling question is, we think, whether or not the deceased received proper and sufficient notice of the assessments.

· The certificate of membership in force at the time of Thompson's death, provides :

" The sending of notices of such assessments, either to the said L. M. Thompson or to the local secretary or the division of the association to which said L. M. Thompson at the time of the sending of the same belongs, by depositing the same in the postoffice, properly addressed to said L. M. Thompson or to such local secretary, is a sufficient notice of

582    Appellate Courts of Illinois.

Vol. 91.] Ry. Pass. & Ft. Conductors' Mut. Aid Ass'n v. Thompson.

the levying of such assessment; and upon any failure to make payment of such assessment any and all rights hereunder shall then and there terminate without any action on the part of this association, time being of the essence of this contract; and this certificate of membership shall become null and void without notice."

Article VI of the by-laws provides:

"Any member of this association neglecting or refusing to pay any assessment for the period of thirty days from date of such assessment shall cease to be a member."

By Article IV of the by-laws, the local secretary is declared to be the agent of the individual members respectively "in receiving from the secretary, and in sending or delivering to the members on his road or division of a road, the notices of assessments."

In the present case there is evidence tending to show that the acting local secretary of the division to which Thompson belonged at the time of his death, was one Canfield, who was also a director of the appellant association. He testifies that he received notices of assessments 357 and 358, and presumes it was about the first of December, 1897. The notice as it appears in the abstract, is as follows:

"Notice of assessment, dated December 1, 1897. To Mr. H. R. Canfield, Secretary C. C. & C. B. Ill. Division C., M. & St. P. Ry., being notice of the disability of George B. Bateman, assessment No. 357. Amount due from your division $27.50, $2.50 from each paying member; also of the death of Peter Sponenberger, assessment No. 358; amount due from your division $27.50, $2.50 from each paying member. Remittance must be made on or before January 1, 1898. All members are required to pay assessments numbers 357 and 358."

This is signed by the president and by the grand secretary and treasurer. Canfield, the acting local secretary, testifies that he can not say how long either before or after the first of December, he received the said notice. He says he has no special recollection about these particular assessments; that they were received in due course of mail, he presumes about the first of December. He does not know when he made out the individual notice to Thompson. On

cross-examination he again says he does not know of his own knowledge when he received the notice of these assessments, and can not swear he made out a notice to Thompson at all, though he supposes he did, as it was his usual custom. That Canfield did not receive the notice from the association before the first of December appears probable from the testimony of the bookkeeper of the association and clerk of the grand secretary, who states that according to his general recollection he mailed the notice to Canfield upon that date, such being his custom, although he has no individual recollection of so doing.

The provision in the certificate of membership to the effect that sending notice of an assessment either to the member " or to the local secretary,   *   *   *   by depositing the same in the postoffice properly addressed," is to be deemed a sufficient notice, together with the provision of the by-laws that neglect to pay within thirty days from the date of the assessment shall work a forfeiture of membership, makes it necessary to determine what is "the date of the assessment." It is stated by appellant's counsel that "the rules of the association provide for no special act or form in making an assessment." The two assessments for non-payment of which it is claimed Thompson's membership ceased, were ordered in November "for the month of December." The by-laws provide that when a claim has been approved by the board of directors and an assessment authorized, "the secretary shall make or cause to be made an assessment   *   *   *   upon each member of the association." It is conceded that the only way in which the secretary complied with this requirement was by making out and forwarding the notices. In Weakley v. N. W. Ben. & M. Aid Association, 19 Ill. App. 329, it is said, " the date of the assessment means necessarily the time when it is made out by the secretary and mailed to the assured in accordance with the terms of   *   *   *   the by-laws." In other words the date of the assessment is the date of the mailing of the notice. If, then, the time of mailing the notice is definitely proven, the " date of assessment " may be said to be

584    APPELLATE COURTS OF ILLINOIS.

VOL. 91.]    Ry. Pass. & Ft. Conductors' Mut. Aid Ass'n v. Thompson.

fixed as of that date. It is not necessarily the date which may be stated on the face of the notice, but the date of mailing. Under the by-laws the deceased was entitled to thirty full days "from date of such assessment," that is, from the date of mailing the notice, before his membership ceased.

It is not disputed that the burden is upon the association to establish the alleged default of Thompson by competent proof before it will be permitted to insist upon a forfeiture. (N. W. Traveling Men's Association v. Schauss, 148 Ill. 304.) In the present case the bookkeeper of appellant states that he mailed about five hundred of these notices the first of December; but the recollection of so doing is simply by what he was accustomed to do; that he has " no individual recollection of this notice outside of the habit of mailing to each division; I do not know whether I mailed this to Mr. Canfield or not." Canfield testifies that he received the notice, and that he presumes it was about the first of December, but has no special recollection about it. While, according to the by-laws, Thompson was entitled to thirty days from the date of the assessment, that is, the date of mailing the notice to the local secretary, the notice itself required that "remittance must be made on or before January 1, 1898." If, then, the proof fails to show definitely that the notice was actually mailed on or before December 2, 1897, the deceased was required to pay the assessments in question within less than the prescribed thirty days. Such a notice, requiring a member of an association of this character to pay an assessment before it is due, is invalid. U. S. M. A. Association v. Mueller, 151 Ill. 254 (263); Ry. Pass. & Ft. Con. Ben. Association v. Leonard, 82 Ill. App. 214 (221).

It is conceded that Canfield, the local secretary, did receive the notice, but when it was mailed to him, does not satisfactorily appear. There is also some evidence tending to show that the deceased had notice of the existence of such assessments and that he was preparing to pay them at the time of his death. But the material question is whether

the notice to the local secretary, which, by the by-laws, is made notice of the levy of the assessment to the deceased, was given thirty days prior to the date, when by said notice, payment was required.    We think the evidence does not so prove, and that appellant has failed to establish its right to forfeiture against the deceased.

The day Thompson was killed an offer was made by his brother to pay these assessments, and the grand secretary was about to receive the money, when the brother informed him of Thompson's death.    It is clearly shown to have been the custom of the association to receive payments of assessments long after they were due, and apparently payment of a November assessment of the same year had been received from the deceased after it was due, without objection from the association.    Such a practice was calculated to induce the belief that forfeiture would not be insisted on merely because payment should be delayed beyond the stipulated time.    But in view of the conclusion above stated, we need not dwell upon this question.

Objection is made that the bill is defective, but we regard it as sufficient.

The judgment of the Superior Court must be affirmed.