SOVEREIGN CAMP WOODMEN OF THE WORLD *v.* LAW.

4-3800

Opinion delivered March 25, 1935.

*Rainey T. Wells* and *Arnold & Arnold,* for appellant.
*Will Steel* and *Frank S. Quinn,* for appellee.

MEHAFFY, J. Martin M. Law brought this suit in the circuit court to recover $500 because of total disability. Shortly after bringing the suit Mr. Law died. The case was then revived in the name of his widow, Mrs. Docia Law, as special administratrix.

Martin M. Law, on August 3, 1917, made written application to appellant for a benefit certificate, and appellant issued a benefit certificate to him on August 15, 1917, in the maximum sum of $1,000, Docia Law being named as beneficiary. Thereafter, in 1920, Law surrendered this certificate, and the appellant issued to him another, the one involved in this case.

Paragraph 12 of the certificate provides: "If such member, while younger than sixty years of age, and while the certificate is in full force and effect, has suffered bodily injury, through external, violent or accidental means, or by disease, and shall furnish satisfactory proof to the society that he is and will be permanently, totally, continuously and wholly prevented thereby for life from pursuing any and all gainful occupations or performing any work for compensation of value, provided such disability is in no wise the result of self-inflicted injury, or injury received or disease contracted while engaged in any unlawful act, or as a result of his own vicious, intemperate or immoral acts, he may have the option of surrendering this certificate for cancellation and receiving in settlement thereof, less any indebtedness due to the society, one-half of the face amount of his certificate as a permanent total disability benefit, payable in one sum, or the value of such sum payable in ten equal instal-

ments, or in the way of a life annuity, or in paid-up insurance.''

Suit was brought by the insured who alleged that, while he was younger than 60 years of age and said certificate was in full force and effect, he became ill from disease, which disease permanently, totally, continuously and wholly prevented him for life from pursuing any and all gainful occupations, etc. He further alleged that he notified the appellant and requested blanks on which to make proof of disability. Appellant declined to send him blanks to make proof, and denied liability.

The appellant answered, pleading the provisions of the policy, and contended that Law failed to pay his premium due in June, 1933, and that he became suspended on July 1, 1933. Appellant also contended that his failure to make proof of disability disentitled him to recover.

Dr. Middleton testified that he treated Law, beginning in April, 1930, and that at that time he was suffering from high blood pressure and Bright's disease, and that he had had a slight stroke a few days before he was called to treat him. His blood pressure was 200 on April 24, 1930. This doctor also testified that his condition in 1930 was better than it was at any time after that; that it was permanent and continuous, and, while it was possible for Law to do some labor, he should not have done it, and could not do it without aggravating his condition.

Artice Law, daughter of Martin M. Law, testified that her father had been sick three or four years, and that in March or April he was swollen and could not get his breath; that after that time her father could not do any work, and was confined to his bed part of the time.

A. L. Meador testified that he was the financial secretary of the local lodge, and that Law was a member of said camp, and that he had paid his dues for May, 1933; that Law was in good standing prior to May, 1933; that Law was suspended in the month of July, 1933, for not paying the June installment; that the suspension took place on July 1st, and that Law had never paid any premiums after May, 1933; Law had paid all dues and assessments from 1917 up to and including May, 1933.

There was introduced in evidence a copy of a letter written by Mr. Will Steel on May 15, 1934, advising appellant that Law became totally and permanently disabled from Bright's disease while his certificate was in force; that he had been disabled for more than a year, and demanded settlement in the sum of one-half the face of the policy, and requested proper blanks for furnishing proofs. The appellant answered the letter of Mr. Steel advising him that Law was suspended in July, 1933, and that his certificate was null and void, and that no benefits were payable. Law died June 18, 1934.

The case was tried before the court sitting as a jury, and judgment rendered against the appellant for $500, and to reverse this judgment this appeal is prosecuted.

Appellant quotes several provisions of the by-laws and certificate, but relies chiefly on the fact that no notice or proof of disability was furnished the company. Appellant cites and quotes at length from the case of *Bergholm* v. *Peoria L. Ins. Co.*, 284 U. S. 489, 52 S. Ct. 230, 76 L. Ed. 416. That case was decided on February 15, 1932. The court in that case said that the income disability clause provides: ''Upon receipt by the company of satisfactory proof that the insured is totally and permanently disabled, as hereinafter defined, the company will pay,'' etc., and the court in the Bergholm case refers to the case of *Minnesota Mutual Life Ins. Co.* v. *Marshall*, 29 F. (2d) 977, and stated that the court there held that the waiver took effect at the time of the disability, and did not depend upon the time when proof thereof was furnished. The court further said: ''We do not need to controvert this construction of the words quoted, or question the soundness of the view of the court that the existence of the disability before the premium became in arrears, standing alone, was enough to create the waiver. In that view, the obligation to furnish proof was no part of the condition precedent to the waiver; but such proof might be furnished within a reasonable time thereafter.''

The policy in the Marshall case, *supra,* so far as the disability clause is concerned, was almost identical with the policy in the instant case. It provided if the insured,

while the policy is in full force and effect, and without default in the payment of premiums, shall become totally and permanently disabled, as hereinafter provided, and shall furnish satisfactory proof thereof, etc. Those are the exact words in the policy sued on here.

The Supreme Court of the United States, on April 15, 1929, denied a petition for a writ of certiorari to the Circuit Court of Appeals of the Eighth Circuit. 279 U. S. 851, 49 S. Ct. 347. So it seems that the Supreme Court of the United States approves the construction of the policy provision in the Marshall case.

It is true that proof of disability was not made, but the disability occurred while the policy was in full force and effect, and, when the total disability occurred, the rights of the parties were fixed. Before bringing suit, however, the appellee was required to make proof of disability, but this proof was waived by the appellant when the appellee's attorney notified them of Law's disability and requested blanks to make proof, and the appellant declined to furnish blanks and denied liability. This was a waiver of proof of disability. The policy in the instant case did not require proof of disability to be made at any certain time. As to waiver of proof of disability, see *Security Ins. Co. of New Haven* v. *Smith,* 183 Ark. 254, 35 S. W. (2d) 581; *Inter-Ocean Cas. Co.* v. *Copeland,* 184 Ark. 648, 43 S. W. (2d) 65.

"It is a general principle that forfeitures are not favored in law, and nowhere is this more applicable than in the construction of insurance contracts. (*Palatine Ins. Co.* v. *Ewing,* 92 F. 111.) A construction of a policy resulting in a forfeiture will not be adopted except to give effect to the obvious intention of the parties. * * * Nor will provisions for the forfeiture in policies of insurance be extended beyond the mischief intended to be met thereby. Contracts of insurance, whether of life or fire insurance, will therefore be construed so as to avoid a forfeiture if possible." *Order of Ry. Conductors of America* v. *Skinner, ante* p. 116; *N. Y. Life Ins. Co.* v. *Shivley,* 188 Ark. 1044, 69 S. W. (2d) 392; 2 Cooley's Briefs on Ins. 991; *Maloney* v. *Md. Cas. Co.,* 113 Ark. 174,

167 S. W. 845; *Pfeiffer* v. *Mo. State Life Ins. Co.*, 174 Ark. 783, 297 S. W. 847.

Notice and proof of disability was a condition subsequent, and liability attached upon the happening of the total and permanent disability.

This court construed the certificate and clauses relied on here in the case of *Sovereign Camp of Woodmen of the World* v. *Meek*, 185 Ark. 419, 47 S. W. (2d) 601.

The company cannot complain about proof of loss not being made when it denied liability and declined to furnish blanks upon which to make proof. In discussing these provisions of the policy, the court in the Marshall case, *supra*, said: "However much the legal mind may differ as to the meaning of these provisions, the ordinary layman would construe them to mean that, in the event he became disabled before his premium fell due, his insurance would be continued until his disability was removed or until his death. That is the natural and reasonable construction to be placed upon the language used in this policy. Any other construction, to my mind, would be contrary to the full purpose of the contract and deprive the insured of one of the principal benefits of his policy."

"Contracts of insurance should receive a reasonable construction so as to effectuate the purposes for which they are made. In cases where the language used is ambiguous, it should be construed in favor of the insured because the policy is written on forms prepared by the insurer." *Ætna Life Ins. Co.* v. *Spencer*, 182 Ark. 496, 32 S. W. (2d) 310.

"This policy, like all policies of insurance, should be construed most strongly against the insurance company that wrote it, and it is also a well-established rule of this court in the construction of contracts of this character that, if capable of two constructions, one of which will make the policy void, and the other will avoid a forfeiture, that construction must be adopted which avoids the forfeiture." *United Order of Good Samaritans* v. *Reavis*, 186 Ark. 1143, 57 S. W. (2d) 1052.

The facts in this case are practically undisputed. There is no evidence contradicting the evidence of Dr.

Middleton or Artice Law. There is no dispute about the fact that Law had paid his premiums from 1917 up to and including May, 1933, and we think the evidence clearly shows that, before another premium was due, he was totally and permanently disabled. In fact, he died shortly after that.

We find no error, and the judgment of the circuit court is affirmed.